## HYDE vs. CHAPMAN and another.

FRAUDULENT CONVEYANCE. (1, 3) *Proof required to sustain action.* (2) *Consideration. Facts negativing fraudulent intent.* (4) *When creditor may maintain action.*

1. In an action to set aside as fraudulent a conveyance of land from A. to B., proof that at the time of its execution plaintiff was a judgment creditor of the firm of P. & Co., of which A. was a member; that A. had acquired title to the land under three several conveyances for an aggregate sum of $2,675; that the consideration named in his deed to B. was $3,000; and that the sheriff to whom the execution against P. & Co. had been delivered (and who had levied the same on the

land in question, but had not made return of the writ before the commencement of this action), had no knowledge of any personal property belonging to either of said firm, out of which the execution could be satisfied, *held*, insufficient to support a finding that the conveyance was made with intent to defraud creditors.

2. If the land was originally purchased by B. with his own money, and conveyed to A. by the direction and for the use and benefit of B., without any trust expressed, although A. became thereby (under sec. 7, ch. 84, R. S.) the absolute owner, and no trust resulted in B.'s favor which equity would enforce against A., nevertheless these facts would constitute a *valid consideration* for a conveyance of the land by A. to B., and would negative the conclusion of a fraudulent intent in such conveyance as against A.'s creditors.

3. Under our statute (ch. 108, R. S.), the question of fraudulent intent in such conveyance is one of *fact*, and not of law; and no such conveyance is to be "adjudged fraudulent as against creditors or purchasers *solely* on the ground that it was not founded on a valuable consideration." The party seeking to set the conveyance aside must therefore establish some fact as a ground for the inference of fraud, besides the voluntary character of the conveyance.

4. There was no evidence that when the execution was levied on the land, A. was in possession thereof under any claim of title in himself, so as to have an interest therein liable to be sold on execution (*Bunker v. Rand*, 19 Wis., 253). Plaintiff, therefore, never having acquired any specific lien on the land by the levy, could not maintain an action to set aside a conveyance thereof until the execution (on the judgment against P. & Co.) was *returned unsatisfied*.

APPEAL from the Circuit Court for *Rock* County.

The following statement of the case was prepared by Mr. Justice COLE as a part of his opinion :

"One of the objects of this suit is to set aside a deed executed by the defendant *B. A. Chapman* to his codefendant *James A. Chapman*, February 1, 1869, upon the ground that such deed is fraudulent and void as to creditors. The plaintiff is a judgment creditor of the firm of N. O. Perkins & Co., of which firm *B. A. Chapman* was a member. He obtained his judgment against the firm November 22, 1869, for $601.49, damages and costs; and issued an execution, which was levied on the land in controversy ; but the execution was not returned

when this suit was commenced. The complaint states, in substance, as bearing on the question of fraud, that on the 1st day of February, 1869, *B. A. Chapman* and the other members of the firm were insolvent ; and that, for the purpose of avoiding the payment of the plaintiff's debt, and by collusion with *James A. Chapman*, he fraudulently conveyed the lands to *James A.* ; that such conveyance was without consideration ; and that *James A.* never took possession of the property, but that it continued in the possession of *B. A. Chapman*, who holds and owns the same and receives the rents and profits.

The answer of the defendant *James A. Chapman* denies all the charges of fraud and collusion stated in the complaint — denies in fact all the material allegations therein set forth, and avers that the lands were originally purchased by himself, for his own use and benefit, and paid for with his own money ; that the title was taken in the name of *B. A. Chapman* for the accommodation and benefit of himself, who was the real and equitable owner of the lands ; that *B. A. Chapman* never had any equitable title or interest in them, and never occupied, cultivated or possessed any portion of them, except as he was permitted to do so by him, the real owner.

The court below found as facts established by the evidence, that *B. A. Chapman* was the sole and absolute owner of the lands, and that he purchased and had possession and control of them, and received the profits accruing therefrom, for his own use and benefit, when this action was commenced ; that the plaintiff was a creditor of the firm of N. O. Perkins & Co., when the deed of February 1, 1869, was executed ; that at that time each member of the firm was insolvent and unable to pay his debts ; and that the deed was without any adequate or valid consideration, and was therefore fraudulent and void as to the plaintiff and other creditors of *B. A. Chapman*."

Judgment was therefore rendered declaring said deed fraudulent and void as against said plaintiff and his said judgment.

The defendant *James A. Chapman* appealed.

*Cassoday & Carpenter*, for appellant:

1. The fact that *James A. Chapman* purchased the land and paid the entire consideration, and then, for his own use and benefit and accommodation, took the title in the name of *Byron A. Chapman*, with the understanding that it should be reconveyed to him, is not only a good and meritorious consideration for such reconveyance, but is a *valuable consideration*; and even if the facts were such that he could not, on account of sec. 7, ch. 84, R. S., have compelled *B. A. Chapman* to give him a deed, yet when the deed was given, it could not be impeached by a creditor of *B. A. Chapman*, or his firm, even if he and all the firm were insolvent at the time. *Foote v. Bryant*, 47 N. Y., 544; *Siemon v. Austin*, 29 N. Y., 598. The opinion published in *Gilbert v. Gilbert*, 1 Keyes, 159, was in fact a *dissenting* opinion. See 47 N. Y., 551. 2. Even if the conveyance from *B. A. Chapman* had been without any consideration, that fact would not be sufficient to raise a presumption that it was fraudulent as to the plaintiff. Under sec. 1, ch. 108, R. S., a conveyance is void only when the evidence shows that it was "made *with intent* to hinder, delay and defraud creditors." Sec. 51, ch. 169, provides that when a conveyance is "made or created *with intent* to hinder, delay or defraud creditors," etc., the parties thereto " shall upon conviction be deemed guilty of a misdemeanor." Thus it appears that the intent which will avoid a conveyance, is a corrupt, *criminal* intent. Hence sec. 4, ch. 108, R. S., declares that " the question of fraudulent intent    *    *    shall be deemed a *question of fact* and not of law; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers, *solely* on the ground that it was not founded on a valuable consideration." Fraud cannot be inferred from mere want of consideration, but the burden of proving the intent is upon the creditor who impeaches the conveyance. *Loeschigk v. Hatfield*, 5 Rob., 26; *S. C.*, 4 Abb. Pr., N. S., 210; *Dygert v. Remerschneider*, 32 N. Y., 629, especially

Hyde vs. Chapman and another.

opinion of WRIGHT, J., p. 636, affirming *S. C.*, 39 Barb., 417 ; *Winchester v. Charter*, 12 Allen, 606.

*I. C. Sloan,* for respondent :

1. The legal estate in this land had vested absolutely in *B. A. Chapman.* Sec. 7, ch. 84, R. S. 2. The conveyance to *J. A. Chapman,* being without consideration, was void as to the grantor's creditors, without any proof as to his insolvency at the time it was executed. The burden of proof is on the grantee to show that the grantor was solvent, and that the effect of the conveyance would not be to defeat the collection of the claims of creditors. *Hinde's Lessee v. Longworth,* 11 Wheat., 199 ; Opinion of SPENCER in *Seward v. Jackson,* 8 Cow., 434, and opinion of the chancellor on p. 423 ; *Babcock v. Eckler,* 24 N. Y., 623 ; *Lerow v. Wilmarth,* 9 Allen, 386 ; Story's Eq. Jur., § 359. In *Hinde's Lessee v. Longworth,* it was held that a deed *from parent to child,* for the consideration of love and affection, is not absolutely void as against creditors, but that the presumption of fraud arising from the want of a valuable consideration may, in such a case, be met and repelled by proof that the grantor was in prosperous circumstances, and that the gift was a reasonable provision for the child. But where, as here, there is no blood relationship between the grantor and the grantee, and no duty of the former to provide for the latter, growing out of such relationship, the deed is conclusively void as against creditors who are defeated in the collection of their claims by it. It is only *subsequent* creditors who must show a fraudulent intent. As against a *prior* creditor, a voluntary conveyance is absolutely void. *Reade v. Livingston,* 3 Johns. Ch., 481, and cases cited in the opinion. In *Taylor v. Jones,* 2 Atk., 600, it was held that if the grantor remained in possession, the conveyance was void as against *subsequent* creditors, without any proof of fraudulent intent.

*S. J. Todd,* on the same side, argued that this action was not in the nature of a " creditor's bill," but rather of " a chancery suit in aid of an execution ; " that the former is " a suit brought

by a judgment creditor, after the return of an execution unsatisfied, for the collection of his judgment out of the equitable assets of the defendant" (2 Barb. Ch. Pr., 147; *McElwain v. Willis*, 9 Wend., 548, 561), while the latter is "an action brought by a judgment creditor for the purpose of removing an obstruction fraudulently and inequitably interposed to prevent a sale of real estate or personal property of the judgment debtor upon plaintiff's execution;" that a suit of the latter kind may be maintained before the issue of an execution, or after the execution issued and before its return, or after the return of an execution unsatisfied (*Mohawk B'k v. Atwater*, 2 Paige, 54; *McElwain v. Willis*, 9 Wend., 549, opinion of TRACY, Senator, p. 468; *Beck v. Burdett*, 1 Paige, 305; *Gates v. Boomer*, 17 Wis., 456; *Cornell v. Radway*, 22 id., 260); and that in such actions it is assumed that plaintiff has a lien upon real estate by virtue of the docket of his judgment, or upon personal property by virtue of the levy of an execution, and when, as in this case, the relief sought relates to an obstruction to the sale of real estate, the issue or return of an execution is immaterial. *Clarkson v. De Peyster*, 3 Paige, 320; *Beck v. Burdett*, 1 id., 305; 9 Wend., 568. 2. Admitting the allegations in appellant's answer, there was no resulting trust in his favor. Tay. Stats., 1129, secs. 7, 8; *Garfield v. Hatmaker*, 15 N. Y., 475; *Norton v. Stone*, 8 Paige 222; *Gilbert v. Gilbert*, 1 Keyes, 159. 3. The conveyance to *James A. Chapman*, being, therefore, a mere voluntary one, with no consideration even of blood or affection to uphold it, was entirely void as to the plaintiff. *Jackson v. Seward*, 5 Cow., 67, 72; *Jackson v. Myers*, 18 Johns., 425; *Reade v. Livingston*, 3 Johns. Ch., 481, 500; *Hildreth v. Sands*, 2 id., 36, 42; *Walker v. Burrows*, 1 Atk., 93; *Carliste v. Rich*, 8 N. H., 44. 4. To uphold his title as against plaintiff's judgment, *James A. Chapman* must show that at the time the deed to him was delivered, *B. A. Chapman* had other property subject to execution adequate to the payment of all his debts and liabilities then existing. *Reade*

*v. Livingston, supra ; Wood v. Robinson,* 22 N. Y., 564 ; 1 Paige, 125 ; 6 id., 310; *Newman v. Cordell,* 43 Barb., 448 ; *Wood v. Hunt,* 38 id., 302. 5. In the case of personal property, the fact that the debtor retained possession would be conclusive evidence of fraud in the pretended sale, unless the contrary were shown. Tay. Stats., 1256, § 5. There is equal reason for such a presumption in the case of real estate, where the grantor remains in . possession receiving the rents and profits. *Taylor v. Jones,* 2 Atk., 600 ; *Sands v. Hildreth,* 14 Johns., 493 ; *Sands v. Hildreth,* 2 Johns. Ch., 36. 6. The conveyance being fraudulent and void as to the plaintiff, his judgment became a lien upon the land as soon as it was docketed. *East man v. Schettler,* 13 Wis., 324 ; *Cornell v. Radway,* 22 id., 260 , *Van Buren v. Myers,* 18 Johns., 425 ; 14 id., 493, 499 ; 2 Johns. Ch., 35.

COLE, J. It is claimed on the part of the defendant *James A. Chapman,* that there was no sufficient evidence in the case which warranted the court in finding that the conveyance from *B. A. Chapman* to him was without adequate consideration and fraudulent as to creditors. It seems to us that this is so. There does not appear to have been any serious effort made on the trial by the plaintiff to support the charge that the deed was executed by *B. A. Chapman* with a fraudulent intent. This was a question of fact, and could only be established by competent evidence. It did indeed appear that the firm of N. O. Perkins & Co. were indebted to the plaintiff for rent when that conveyance was made, in the sum of $435.35. Further it appeared that the lands had been conveyed to *B. A. Chapman* by three several conveyances for an aggregate consideration of $2,675, and that *B. A. Chapman,* on the day above named, conveyed them to *James A. Chapman* for a consideration expressed in the deed of $3,000. It was also shown by the deputy sheriff, who received the execution on the 24th of November, 1869, that he had been acquainted with the judgment debtors for some years ; that they had previously

been in business in Beloit, manufacturing soap, and had failed ; that their personal property was "*mostly*" mortgaged to some party in Chicago; and that he knew of no personal property belonging to either of them out of which he could satisfy the execution. This is the substance of the testimony given on the part of the plaintiff; the defendant submitting the case without evidence. And it seems to us that it would be going much further than the facts would warrant, to hold upon this evidence that the deed given by *B. A.* to *James A. Chapman* was made with intent to hinder and defraud creditors. The deed itself expresses a sufficient and valuable consideration, and there is not a particle of proof to show it does not state the true consideration. True, the defendant *James A. Chapman* states in his answer how the consideration was paid. He alleges that he was the purchaser originally, paying for the lands with his own money, but having the title conveyed to *B. A. Chapman* for his own use and benefit. Now it is said that if this is a true history of the transaction, *B. A. Chapman* became under our statute, sec. 7, ch. 84, R. S., the absolute owner in law and equity, and that no trust resulted in favor of *James A. Chapman* in consequence of his paying such consideration. This may be conceded ; still, if *B. A. Chapman* recognized *James A. Chapman's* equities, and actually conveyed the property according to the original understanding and arrangement, we apprehend there would be nothing in the transaction which a court of equity would condemn. For it would be entirely competent for *B. A. Chapman* to regard the equitable rights of *James A. Chapman,* and to secure them, either by a lawful declaration of trust, or by a conveyance ; and he was under the highest moral obligation to do so, if such was the arrangement between them. See *Foote v. Bryand,* 47 N. Y., 544–549. At all events there is nothing in the admissions in the answer which authorizes the conclusion that the deed was not executed upon an adequate consideration. But suppose it was not, how then stands the case? Our statute

Hyde vs. Chapman and another.

provides that the question of fraudulent intent, in all cases arising under ch. 108, R. S., shall be deemed a question of fact and not of law, nor shall any conveyance be adjudged fraudulent as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration. Sec. 4. The fraudulent intent cannot, therefore, be presumed from the fact that the conveyance was voluntary, although that circumstance may properly be considered with the other evidence in determining the question of fraudulent intent. In the present case it seems to us the evidence is entirely insufficient to show that the deed was executed by *B. A. Chapman* with the intent to commit a fraud upon his creditors. The counsel for the plaintiff seems to have assumed that if the conveyance was voluntary it was presumptively void. But this is a mistake. The conveyance in question is sought to be set aside for fraud, and it was incumbent on the plaintiff to adduce sufficient evidence to show that he was entitled to relief upon that ground.

Another objection was taken by the counsel for the defendant, which seems to us fatal to the plaintiff's right to maintain the action. It appears that no execution was ever issued and returned unsatisfied when the suit was commenced. The deed from *B. A.* to *James A. Chapman* was executed and delivered nearly nine months before the rendition of the judgment, and it does not appear that the plaintiff did or could obtain any specific lien upon the property by either a judgment or a levy under the execution. Whether the judgment debtor was in possession of the land in his own right when the judgment was obtained, so as to have an interest therein liable to be sold on execution, within the doctrine of *Bunker v. Rand*, 19 Wis., 253, is a fact not proven in the case, while certain it is that the legal estate was in *James A. Chapman*. Under these circumstances it is difficult to say that the plaintiff ever acquired any lien upon the property. And if he did not, the law seems to be well settled that this right to relief depends upon the fact of his having exhausted his legal remedies without being able to

obtain satisfaction of his judgment. The issuing of an execution and its return unsatisfied was essential to his right to maintain this action. *Beck v. Burdett,* 1 Paige, 305 ; *Gates v. Boomer,* 17 Wis., 455 ; *Cornell v. Radway,* 22 id., 260.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint. ·