Marvin vs. Anderson and others.

MARVIN, Trustee, Appellant, vs. ANDERSON and others, Respondents.

*September 7 — September 24, 1901.*

*Insolvency: Fraudulent conveyances: Corporations: Sale of property: Trust fund: Creditors' lien: Purchase of stock: Deed: Presumption of authority.*

1. The term "insolvency," as understood in the administration of bankrupt and insolvent laws, is inability of a person to pay his debts as they mature in the regular course of business; as understood in dealing with contracts challenged on the ground of fraud, actual or constructive, it has reference to insufficiency of assets of the debtor to cover his liabilities.

2. In respect to the *bona fides* of a sale of property when challenged by a creditor of the vendor on the ground of fraud, the latter is said to have been solvent at the time of the sale if he then possessed a substantial excess of assets, on a cash basis, over and above his liabilities; and that rule applies to corporations as well as natural persons.

3. A solvent, going corporation has the same right to sell its property in the regular course of business, regardless of whether the vendee is a stockholder of the corporation, as a natural person.

4. The trust fund doctrine, so called, has no application to a going corporation. Its creditors have no equitable lien upon its assets. Such a lien does not attach till the corporation is insolvent and has either suspended business or is on the verge of collapse, so that it may reasonably be said to be civilly dead as regards the purposes for which it was organized.

5. A solvent corporation may purchase its own stock if not prohibited by its articles of organization or some statute.

6. If capital stock in a corporation is purchased for it by its officers without any special authority so to do, the transaction cannot be impeached by stockholders who knew of and consented to the transaction, or by the corporation or any representative thereof, if all the stockholders acquiesced in the purchase, nor by subsequent creditors.

7. If the deed of a corporation is executed in the manner prescribed by statute, the presumption is that its officers were duly authorized to make it. Such presumption will prevail against all persons who acquiesced in the transaction, or mere proof that corporate action by the stockholders was not taken, specifically authorizing the particular transaction.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. Affirmed.

Action by the trustee in bankruptcy of the property of the Badger Cycle Company to set aside a deed, given by the bankrupt some time before the commencement of the bankruptcy proceedings, upon the ground that it was fraudulent as to the creditors and stockholders of the corporation. The court decided as matters of fact as follows:

On October 22, 1897, the day when the deed was given to defendant *Louis Anderson*, he was, and for some time prior thereto had been a stockholder of the corporation, possessed of five out of the fifty shares of its capital stock, each share being of the par value of $100, and was also a director of the corporation and the foreman of its business. At such time the corporation was indebted to its stockholders in the sum of $1,573, $803 of which was due to *Anderson* for labor and services; was also indebted to outside parties in the sum of $5,444.32; and possessed property of the value of from nine to ten thousand dollars, being solvent and in every respect a going corporation. *Anderson*, upon the advice of his physician, decided to discontinue his work for the corporation, and thereupon requested it to pay him the amount due for his services. It being difficult for the corporation to comply with such request by paying *Ander-*

Marvin vs. Anderson and others.

son in money, the parties agreed, without any formal action by the directors as a board or by the stockholders, but upon their individual consideration and determination, that plaintiff should release his claim against the corporation and transfer to it his five shares of capital stock, and receive therefor the real estate in question, which was of the value of $850 and was not used in the corporate business, four bicycles of the value of $20 each, and $225 in money, which agreement was fully consummated. All the stockholders and directors had knowledge of and fully acquiesced in the entire transaction, and after it occurred treated it as valid till after the commencement of the proceedings in bankruptcy nearly two years subsequent to the making of the deed. Aside from claims of stockholders of the corporation who acquiesced in the transaction in question, the only claim proved in bankruptcy which existed at the time of such transaction was a small one in favor of one Comstock, which, prior to the commencement of this action, was fully paid. After the making of the deed and before its validity was in any way called in question, *Anderson* mortgaged the land to defendant *John Gilbert* to secure the payment of a loan of $200.

Upon such facts the court concluded as a matter of law that plaintiff was not entitled to recover, and thereupon rendered judgment in favor of defendants.

For the appellant there was a brief by *Tenney, Hall & Tenney*, attorneys, and *H. W. Chynoweth*, of counsel, and oral argument by *Mr. Chynoweth*. They contended, *inter alia*, that under sec. 1775, as amended, the corporation had no power to convey the legal title to the said land, except as prescribed by the statute. This it did not do, hence its action was void. Thompson, Corp. §§ 5060, 5075; *Brewster v. Hartley*, 99 Am. Dec. 237; *Stow v. Wyse*, 18 Am. Dec. 99; *Henning v. U. S. Ins. Co.* 4 Am. Rep. 332; *Sanborn v. Fireman's Ins. Co.* 77 Am. Dec. 419; *Rockwell v. Elkhorn Bank*,

13 Wis. 657; *Isham v. Bennington I. Co.* 19 Vt. 230; *Fountaine v. Carmarthen R. Co.* L. R. 5 Eq. 316; Cook, Stock (2d ed.), § 725; *Galloway v. Hamilton,* 68 Wis. 654.

For the respondents there was a brief by *Haskell & Getts,* attorneys, and *Jones & Stevens,* of counsel, and oral argument by *H. M. Haskell* and *E. Ray Stevens.*

MARSHALL, J. If the Badger Cycle Company was solvent at the time of the transaction in question, the main contention by counsel for appellant, that the judgment appealed from is wrong, fails. The trial court decided that question in the affirmative because the property of the corporation, at a fair valuation, exceeded to a considerable extent its debts. Appellant's counsel say that was not the proper rule to be applied. The conclusive answer thereto is that the trial court followed the law as it has been laid down by this court. *Hamilton v. Menominee Falls Q. Co.* 106 Wis. 352; *Shaw v. Gilbert, ante,* p. 165. Counsel makes the common mistake of failing to distinguish between the meaning of the term "insolvent," as the subject of insolvency is dealt with by insolvent and bankrupt laws, and the general meaning thereof. The former is inability of a person to pay his debts as they mature in the ordinary course of business; the latter is a substantial excess of a person's liabilities over the fair cash value of his property. The former does not militate against a debtor corporation dealing with its property as it sees fit; while the latter, in case of a corporation, if it is on the verge of collapse or has suspended payment — is in a condition, as the books say, to be rightfully considered, so far as capacity to do business is concerned, civilly dead — is held to impress upon its property a trust for the benefit of its creditors. *Hinz v. Van Dusen,* 95 Wis. 503; *Shoemaker v. Washburn L. Co.* 97 Wis. 585; *Graham v. Railroad Co.* 102 U. S. 148; *Slack v. N. W. Nat. Bank,* 103 Wis. 57; *Hamilton v. Menominee Falls Q. Co., supra.*

The further question is presented of whether the corporation was justified, as to its creditors or stockholders, in purchasing its own stock and parting with corporate property in payment therefor. There is no impediment in the way of a solvent corporation, having power to purchase and sell and convey property and not prohibited by its constitution or any statute, from buying in its own stock. This court has several times passed upon that question. *Shoemaker v. Washburn L. Co., supra; Calteaux v. Mueller*, 102 Wis. 525. It was held in the last case cited that such rule could not be invoked to justify an officer of a corporation, without special authority, in buying in its capital stock in its name, but that situation does not apply in this case, since all the stockholders of the cycle company knew of and individually considered and approved the transaction in question before it occurred, and thereafter, so long as the corporation existed as a business institution, a period of some two years, acquiesced in it.

If under any circumstances the sale of land to respondent could be impeached on the ground of fraud or want of power in the corporation to make the sale, appellant has no standing in court to do so, since all the stockholders are estopped by their conduct from complaining, and the receiver, as the representative of the corporation, has no better right in their behalf. Further, there is no indebtedness to any nonstockholder of the corporation which existed at the time the transaction took place. *Shoemaker v. Washburn L. Co., supra; Graham v. Railroad Co., supra.* Here again counsel seem to have fallen into a common error, that of not keeping in mind that the rule under which, in any case, the property of a corporation is deemed a trust fund for creditors and stockholders, or either, is wholly a creation of courts of equity, and that only those have equitable rights in a fund at the time of its depletion who have then a right to resort to such fund to satisfy their claims. Creditors of a corporation are

not presumed to have relied upon property of their debtor which it did not possess when the indebtedness accrued, and therefore are not held to have any equitable claim thereon.

The last suggestion made by counsel for appellant is that the title to the property did not pass because the acknowledgment was defective, and further because the stockholders did not, by a majority vote, authorize it. To that, sec. 1775, Stats. 1898, is cited, which provides that a corporation may, " by a majority vote of the stock given at any regular meeting or at any special meeting duly called for that purpose, sell and convey or authorize to be conveyed all or any portion of the property owned by it, whether real, personal or mixed." This court has never held, as counsel seem to think, that a majority vote of stockholders of a corporation is necessary to every transfer of real estate made by it in the regular course of its authorized business. *Galloway v. Hamilton*, 68 Wis. 651, cited by counsel to sustain their view, merely holds that a corporate deed, to be valid, must be executed in the manner required by statute, that is, must be signed by the president or other authorized officer of the corporation, sealed with the corporate seal, and countersigned by the secretary or clerk. That was done in this case. Whether the acknowledgment was defective is immaterial. That has nothing to do with the effectiveness of the instrument between the parties to convey title. True, as a general rule and by statute it is necessary that corporate officers should have authority from the corporation to execute deeds, but one executed in the manner above indicated raises a strong presumption that they were so authorized. Herman, Estoppel, § 1176; Elliott, Priv. Corp. § 495; *Ford v. Hill*, 92 Wis. 188; *New England W. & C. Co. v. Farmington E. L. & P. Co.* 84 Me. 284; *National S. Bank v. Vigo Co. Nat. Bank*, 141 Ind. 352; *Patterson v. Robinson*, 116 N. Y. 193; *Eureka I. & S. Works v. Bresnahan*, 60 Mich. 332; *Blackshire v. Iowa H. Co.* 39 Iowa, 624; *Murphy v. Welch*, 128 Mass.

489; *National L. & I. Co. v. Rockland Co.* 94 Fed. Rep. 335; *Gorder v. Plattsmouth C. Co.* 36 Neb. 548; 4 Thompson, Corp. § 5029.

We should hesitate in any case to give to sec. 1775, Stats. 1898, the meaning contended for by appellant's counsel. To say that the legislature intended to require corporate action by a majority vote of stockholders at some general meeting, or special meeting called for the specific purpose, as a condition precedent to every sale of corporate property, real or personal, so that every dealer with a corporation would be bound to inform himself as to whether such condition had been fulfilled, would convict the legislature of such an absurd piece of lawmaking that no court would venture to do it without first seeking diligently for some construction of the law within the reasonable scope of the language used that would avoid such meaning. Corporations, in the very nature of things, as to their ordinary affairs, must be permitted to conduct business the same, substantially, as individuals. The confusion that would result from a law that would invalidate every transfer of corporate property, real or personal, unless the act of the corporate officers in the transaction could be referred for authority to some specific vote of a majority of the stockholders formally authorizing it, would be incalculable. The whole trend of modern decisions is against impeachment of executed corporate transactions except by punishment of the corporation at the suit of the state.

Waiving the question of whether a vote of stockholders was necessary in this case in order to strictly comply with the law, the presumption of due authority, arising from the acts of the corporate officers and the consent individually given by all the stockholders, is so strong that it cannot be overcome by mere proof that formal action was not taken as to the particular transaction. General authority, regularly given by stockholders of a corporation to its officers,

to act in the sale of property and convey the same accordingly in the transaction of corporate business, would satisfy the statute.

*By the Court.*— The judgment of the circuit court is affirmed.